UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., )<br><br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED VAN LINES, LLC. )<br>)<br>Defendant. ) | No. 4-06-cv-00219-JCH |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO REFER TO ARBITRATION**

### I. INTRODUCTION

Plaintiffs in this putative nationwide class action seek money damages on behalf of all owner-operators who lease their trucks and driving services to defendant United Van Lines ("United") or one of United's hundreds of independent agents. Plaintiffs allege that United and/or its agents fail to comply with certain compensation disclosure and documentation requirements prescribed by the federal truth-in-leasing regulations, 49 C.F.R. Part 376. United, on the other hand, contends that it and its agents have fully complied with those regulations.

This Court, however, need not determine the merits of the parties' positions because plaintiffs have filed this case in the wrong forum. All owner-operators currently under lease to United have signed an Independent Contractor Operating Agreement ("ICOA"), attached to present Motion as Ex. A. The ICOA requires arbitration of all disputes, including specifically any claim that United or its agents have "violat[ed]**...the federal leasing regulations (49 C.F.R.**

**Part 376)**" (emphasis added).[1]

The Eighth Circuit adheres to the Supreme Court's repeated pronouncements that arbitration agreements must be strictly enforced. *See, e.g., Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001)(Federal Arbitration Act "compels judicial enforcement of [an] arbitration agreement"). Referral to arbitration is particularly appropriate where, as here, the parties' dispute relates to technical and/or complex matters relating to a particular industry. In such circumstances, an arbitrator familiar with industry customs and practices can better address and resolve the parties' differences. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)("Adaptability and access to expertise are hallmarks of arbitration"); *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968)(White, J., concurring)(One of the major benefits of arbitration is the expertise of arbitrators who are familiar with the subject in question).

In this case, the parties' contract includes an agreement to arbitrate the specific claims asserted by plaintiffs. Further, plaintiffs' contentions relate to the technical manner in which owner-operators in the household goods moving industry are compensated, and the ways motor carriers disclose and document such compensation. Not only have the parties already agreed that these issues should be resolved by arbitration, but it is readily apparent that an arbitrator with knowledge of industry practices will substantially promote the fair and efficient resolution of their present disagreements—as opposed to burdening the Court with lengthy and intricate claimant-by-claimant proceedings.

---

[1] Although United's independent agents negotiate separate lease agreements with their own owner-operators, United believes that most if not all of the agents' current leases include a similar arbitration provision. Due to the breadth and scope of the alleged plaintiff class, however, an undetermined number of putative class members may have signed leases without an arbitration clause. But since the vast majority of plaintiff owner-operators have agreed to arbitrate, the present lawsuit should be stayed pending resolution of the arbitration proceedings. *See Part II. F (pp. 17-18) below.*

Both the Federal Arbitration Act ("FAA") and Missouri's Uniform Arbitration Act ("UAA")[2] strongly favor arbitration over litigation and require liberal construction of arbitration clauses. *See, e.g., Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001)("[T]he FAA's 'provisions manifest a liberal federal policy favoring arbitration agreements'"); *McCarney v. Nearing, Staats,* 866 S.W.2d 881, 887 (Mo. App. 1993).

As explained further below, the parties' arbitration agreement in this case is valid, binding, and enforceable under both the FAA and the UAA. Accordingly, this Court should (1) stay the present action as to all putative class members who have entered into agreements to arbitrate with United or a United agent; and (2) refer all such claims to arbitration for individual resolution as specified in the relevant contracts.

## II. ARGUMENT

A.   An Order Enforcing The Arbitration Agreements And Staying This Lawsuit Is The Proper Remedy

The FAA requires federal courts to refer parties to arbitration when a valid agreement to arbitrate exists and their dispute falls fairly within the scope of that agreement. *See* 9 U.S.C. § 4. Section 2 of the FAA expressly mandates that "[a] written provision in...a contract...to settle by arbitration a controversy thereafter arising out of such contract or transaction...**shall** be valid, irrevocable, and enforceable...." 9 U.S.C. § 2 (emphasis added).

The relevant contract in this case plainly includes a "written provision" to submit any disputes to arbitration. Section 24 of the ICOA provides as follows:

> Arbitration Required For All Disputes. **Any dispute**...arising in connection with or relating to this Agreement, its terms, or its implementation, including any allegation...of violations of the requirements of any applicable government authorities,...**including but not limited to the federal leasing regulations (49 C.F.R. Part 376), shall be fully and finally resolved by arbitration** in

---

[2] United's lease agreement with its owner-operators is governed by Missouri law. *See Ex. A, at §23.*

> accordance with (1) the Commercial Arbitration Rules…of the American Arbitration Association…; (2) the Federal Arbitration Act (…with respect to which the parties agree that this Agreement is not an exempt "contract of employment") or, if the Federal Arbitration Act is held not to apply, the arbitration laws of the State of Missouri; and (3) the procedures set forth below.

*Ex. A, at §24(a)*(emphasis added). The above arbitration clause thus specifically mandates arbitration of any claim that United allegedly "violated the federal leasing regulations"—precisely what the plaintiffs in this case allege. There is no question, in short, that the parties' arbitration agreement is squarely implicated here.

If one party refuses to arbitrate as specified in the contract, the FAA authorizes the other party to "petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If the Court sustains the motion and orders arbitration, the pending civil action is properly stayed until final resolution of the arbitration proceedings: "the court…**shall**…stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *accord* Mo. Rev. Stat. § 435.355(4). *See also Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 1000 (8th Cir. 2004)(District court "must stay court proceedings and compel arbitration once [it] determines that the dispute falls within the scope of a valid arbitration agreement"); *Webb v. Rowland & Co.*, 800 F.2d 803, 808 (8th Cir. 1986)(FAA "requires a court to grant a request for a stay of proceedings pending arbitration when…the issue is one which is referable to arbitration under an agreement in writing for such arbitration").

The party seeking to avoid arbitration, moreover, bears the burden of proving that the FAA does not apply to the parties' dispute or that the arbitration agreement is invalid or unenforceable. *See, e.g., United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)(Party opposing arbitration must show "with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute"); *OOIDA v. Swift Transp. Co.*, 288 F. Supp. 2d 1033, 1035 (D. Ariz. 2003)(Those who seek to avoid arbitration "have the burden of establishing that the FAA does not apply to their claims").[3]

Plaintiffs in this case cannot meet their heavy burden. Accordingly, this Court should refer the parties to arbitration in accordance with their written agreement.

### B. Under Both Federal And State Law, Courts Are Required To Rigorously Enforce Arbitration Agreements

The express purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements...and to place arbitration agreements upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 282 (2002). Thus, the Supreme Court has stressed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Further, courts must "reject[] generalized attacks on arbitration" which argue that private dispute resolution mechanisms somehow "weaken[] the protections afforded in the substantive law to would-be complainants." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89-90 (2000).

In Missouri, there is an equally "strong public policy" to enforce arbitration agreements, and Missouri courts similarly construe any purported ambiguities in favor of arbitration. *Village of Cairo v. Bodine Contr. Co.*, 685 S.W.2d 253, 264 (Mo. App. 1985)("[O]nce the intention to arbitrate is established, doubt of the scope of the agreement is resolved in favor of arbitrability"). Thus, independent of the FAA, this case should be referred to arbitration under applicable Missouri law.

---

[3] In *Swift*, plaintiff OOIDA—also the lead plaintiff here—unsuccessfully sought to avoid an arbitration clause in a motor carrier's lease with its owner-operators. *See Part II. C.1 (pp. 6-9) below.*

C.  The Parties' Arbitration Agreement Is Enforceable Under The FAA

  1.  *The FAA Statutory Exemption for "Contracts of Employment" of Transportation Workers is Inapplicable*

Plaintiffs may seek to avoid arbitration by arguing that arbitration agreements between interstate motor carriers and their owner-operators are exempt from the FAA. Section 1 of the FAA excludes from its coverage agreements to arbitrate appearing in "**contracts of employment** of seamen, railroad employees, or any other class of workers engaged in interstate commerce." 9 U.S.C. § 1 (emphasis added). However, numerous provisions of the parties' lease agreement in this case make it clear that the plaintiff owner-operators are independent contractors, not employees. The §1 exemption for "contracts of employment" is therefore not applicable.[4]

Well-reasoned federal case law further confirms this conclusion. In *OOIDA v. Swift Transp. Co.*, 288 F.Supp.2d 1033 (D. Ariz. 2003)—a similar class action lawsuit brought by the same lead plaintiff and asserting similar federal leasing regulation claims—the Court granted the defendant carrier's motion to compel arbitration in accordance with the parties' lease agreement. That lease agreement, similar to United's form of lease, provided that "[a]ny disagreement or litigation arising under this Contract shall be referred to mandatory arbitration and shall be decided under the rules of the American Arbitration Association." *Id.* at 1034. The *Swift* court ruled that plaintiffs' federal leasing regulation claims were plainly encompassed by this broad contract language and, therefore, a valid and enforceable agreement to arbitrate existed for purposes of the FAA. *Id.* at 1040.

---

[4] Indeed, the parties' lease expressly states that "the parties agree that this Agreement is **not** an exempt 'contract of employment'" within the meaning of the FAA. *Ex. A, §24(a)*(emphasis added).

The Court in *Swift* squarely rejected OOIDA's assertion that the FAA's statutory exemption for transportation "contracts of employment" precluded enforcement of the arbitration clause. While acknowledging a "split of authority" on this issue, *id.* at 1035 n.3, the *Swift* Court explained that numerous provisions of the parties' lease make clear that owner-operators are "independent contractors and not employees." *Id.* at 1035. In overruling plaintiffs' argument that such lease provisions should not be dispositive, the *Swift* Court emphasized that it is the party seeking to **avoid** arbitration who has "the burden of establishing that the FAA does not apply to their claims." *Id.* In light of the many unambiguous contract terms establishing that owner-operators are independent equipment and services lessors—and not employees—the Court ruled that plaintiffs "have not met that burden." *Id.* Thus, "[g]iven the strong and liberal federal policy favoring arbitral dispute resolution, the Court cannot conclude...that § 1 [of the FAA] bars the enforcement of the [parties' mandatory] arbitration provision." *Id.*

The Court in *Roadway Package System, Inc. v. Kayser*, 1999 WL 817724 (E.D. Pa. Oct. 13, 1999), *aff'd* 257 F.3d 287 (3rd Cir. 2001), reached the same conclusion. There, the Court cogently declared that:

> The FAA excepts from its scope "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *** **Kayser [an independent owner-operator] worked for RPS as an independent contractor, not an employee.**\*\*\*Therefore, their Agreement does not fall into this [FAA] exemption."

1999 WL 817724, at *4 n.4 (emphasis added). *See also Letourneau v. FedEx Ground Package System, Inc.*, 2004 WL 758231 (D. N.H. April 7, 2004) at *1 (granting motion to compel arbitration; rejecting plaintiff's argument, "for the reasons set forth in [the]... well-reasoned [*Swift*] decision," that his independent contractor agreement constituted an exempt "contract of employment" under the FAA).

Like plaintiffs in the above-cited decisions, the owner-operator claimants in this case are not employees. Rather, they are independent contractors who lease their trucks and driving services to United or an independent United agent. Plaintiffs' own Complaint characterizes the putative class as independent "owner-operator drivers," and describes OOIDA's members as "professional truckers and small fleet owners who own and operate heavy duty trucks." *See First Am. Compl., at ¶¶1-6*. The fact that such owner-operators are independent and professional service providers is also repeatedly confirmed by numerous provisions in the parties' lease agreement. Specifically, the United lease provides that:

- "CONTRACTOR [the owner-operator] **is an independent contractor with respect to the Equipment, transportation, and other services provided** pursuant to its Agreement." *(Ex. A, at §5)*(emphasis added).

- The owner-operator is paid on a per-load basis, receives no employee benefits, and does not have income taxes or FICA contributions withheld from his compensation. *(Id. at §5(e) and Att. A)*.

- The owner-operator is not guaranteed any specific number of shipments, and has the right to refuse any shipment offered to him. *(Id. at §4(a)(1))*.

- The owner-operator is solely responsible for hiring, supervising, paying, and controlling all helpers or employees he needs to provide his moving and transportation services, and for complying with tax and FICA requirements applicable to such helpers. *(Id. at §§5(a), 5(c))*.

- The owner-operator is exclusively responsible for "scheduling work hours and rest periods; selecting routes and fuel stops; deciding when, where, and how maintenance is to be performed on the Equipment; arranging for packing and unpacking as required, loading and unloading, and other CONTRACTOR services relating to the goods being transported;...and obtaining and maintaining workers' compensation insurance on all of CONTRACTOR's personnel...." *(Id. at §5(c))*.

- The owner-operator must supply the truck (which he owns), ensure it is operable and roadworthy, obtain all necessary licenses, permits, and registrations, supply and maintain all parts and supplies needed for safe operation, and pay all expenses and taxes associated with his services. *(Id. at §8(a))*.

In sum, the owner-operators in this case are plainly independent contractors in every sense of that term, and the leases they sign are **not** "contracts of employment" exempt from FAA enforcement. Accordingly, this Court should follow the considered and correct decisions in *Swift, Kayser,* and *Letourneau*, and rule that the parties' agreement to arbitrate is fully enforceable under the FAA.

    2. *The Contrary Case Law Upon Which Plaintiffs Rely is Distinguishable and Poorly Reasoned*

OOIDA will likely point to some contrary court rulings which conclude (erroneously, in United's view) that some owner-operator lease agreements are exempt "contracts of employment" within the meaning of the FAA. Those decisions, however, are based upon different facts and lease provisions, and are legally flawed in any event.

The leading decision supporting plaintiffs' exemption argument is a federal magistrate's opinion in *Gagnon v. Services Trucking Inc.*, 266 F.Supp.2d 1361 (M.D. Fla. 2003). There, the court held that the defendant motor carrier's lease with its independent owner-operators was properly treated as "an [exempt] employment contract" even though the lease provided that the plaintiffs were independent contractors. 266 F.Supp.2d at 1365.[5]

The legal basis for the ruling in *Gagnon* is demonstrably wrong. According to the magistrate judge in *Gagnon*, 49 U.S.C. §14102 authorizes federal administrators to issue regulations requiring motor carriers to retain "control of and be responsible for" the trucks they lease from owner-operators. 266 F.Supp.2d at 1365. Such authority, the court continued, was implemented by the former Interstate Commerce Commission when it issued the federal truth-in-leasing regulations (the same regulations at issue in this case). Specifically, §376.12(c)(1) of the

---

[5] The *Gagnon* court dismissed the express provisions of the lease, asserting that "how the employment relationship is described by the parties in the employment documents is not dispositive." *Id.* at 1364.

leasing regulations requires that all owner-operator lease agreements "shall provide that the authorized carrier lessee shall have exclusive possession, control, and use" of the truck leased from the owner-operator. This mandatory "control" regulation, said the *Gagnon* court, "impose[s] a statutory employer-employee relationship between truck drivers and the motor carriers" as a matter of law. *Id.* at 1365. Consequently, the court in *Gagnon* concluded, "the relationship between the parties **must be** interpreted as an employment relationship" not subject to enforcement under the FAA. *Id.* at 1366 (emphasis added).[6]

The cental premise of *Gagnon*—that the regulatory "control" requirement imposes a mandatory "statutory employer-employee relationship" between all motor carriers and all owner-operators—is plainly incorrect. Indeed, a later subsection of the very same leasing regulation explicitly states that the "control" requirement does **not** create an employer-employee relationship between a motor carrier and its owner-operators:

> Nothing in the ["control"] provisions required by paragraph (c)(1) of this section is intended to affect whether the [owner-operator] is an independent contractor or an employee of the authorized carrier lessee. **An independent contractor relationship may exist when a carrier complies with 49 U.S.C. §14102 and attendant ["control"] administrative requirements**.

49 C.F.R. §376.12(c)(4)(emphasis added). Thus, as the above regulatory language makes perfectly clear, the court in *Gagnon* erred in concluding that owner-operators are "employees" simply because their leases provide that the carrier retains ultimate legal "control" of the trucks it has rented from owner-operators. *Id.* Subsequent court decisions have correctly recognized this fundamental legal flaw in the *Gagnon* decision:

---

[6] The *Gagnon* court repeatedly described the regulatory "control" requirement as the "key ingredient" and "key indicia" of its decision that all owner-operator leases are exempt "contracts of employment" within the meaning of the FAA and state arbitration statutes. *Gagnon*, 266 F.Supp.2d at 1365, 1366.

> *Gagnon* relies partly on the statutory employer-employee ["control"] theory developed in connection with tort liability of the interstate carriers for personal injuries sustained as a result of the actions of [owner-operators] which are...leased to the carrier.\*\*\***However, the ["control"] regulations and case law...are not applicable** to the present situation....**49 C.F.R. §376.12(c)(4), provides that compliance with the ["control"] regulation does not affect the issue of whether or the [owner-operator] is an employee or independent contractor.**

*OOIDA v. C.R. England, Inc.*, 325 F.Supp.2d 1252, 1257-58 (D. Utah 2004)(emphasis added). *See also Renteria v. K & R Transp., Inc.*, No. CV 98-290 (C.D. Cal. Aug. 20, 1999) slip op. at 2 (Ex. B to the present Motion)(Federal leasing regulations do not "establish as a matter of law that plaintiff owner-operators are employees...as opposed to independent contractors.....[Such] Regulations state that [they are not]...'intended to affect whether the...lessor or driver...is an independent contractor or an employee of the authorized carrier lessee'"). In short, because the analysis in *Gagnon* is plainly erroneous, it should not be followed here.[7]

The only other decision concluding that an owner-operator lease agreement is an exempt "contract of employment" is equally flawed. In *C.R. England*, the district court held that because the lease in question "cover[s] the owner-operator's agreement to perform...certain functions related to the operation of the equipment for [the motor carrier lessee's] business," it was necessarily a "contract of employment within the meaning of the FAA." 325 F. Supp. 2d at 1258. The court in *C.R. England*, however, provided no further explanation and identified no other facts to support its conclusion. Nor did the court give effect to the express provisions of the parties' contract, asserting instead that "the boilerplate language of the [lease], [which provides]

---

[7] Several district courts have simply followed the holding in *Gagnon* without examining its plainly incorrect legal basis. *See OOIDA v. Landstar System, Inc.*, 2003 WL 23941713 (M.D. Fla. Sep. 30, 2003), at \*2 ("This Court agrees with the *Gagnon* court's reading..., and concludes that **by operation of federal law** the individual [owner-operator] Plaintiffs and Defendants [motor carriers] have an employee-employer relationship")(emphasis added); *OOIDA v. Allied Holdings, Inc.*, No. 1:03-CV-1698 (N.D. Ga. March 11, 2004) slip op. at 11 (Ex. C to the present Motion)(court agrees with *Gagnon* that "49 U.S.C. §14102 creates **a statutory employer-employee relationship** between truck drivers and motor carriers"), *aff'd* 120 Fed. Appx. 786 (11th Cir. 2004)(emphasis added).

that the relationship is that of 'carrier and independent contractor and not as employer-employee'...does not control on this issue." *Id.*

In the present case, as summarized above, numerous lease provisions demonstrate and confirm that the plaintiff owner-operators are independent and professional service providers—and not employees—of United and its agents. *(Ex. A, at §§4(a), 5(a), 5(c), and 8(a); see also p. 8 above).* Far from mere "boilerplate," these valid and enforceable contract clauses establish in multiple substantive ways that the owner-operators are independent contractors who lease their trucks and professional services to United while retaining sole responsibility for the manner, methods, equipment, and personnel associated with providing those services. There is simply no factual, legal, or other basis to conclude that the plaintiff owner-operators in this case are anything other than independent contractors whose written agreement to arbitrate is, therefore, subject to FAA enforcement.

    3.    *The "Contract of Employment" Exemption Must Be Narrowly Construed*

Since the avowed goal of the FAA is to eliminate prior judicial "hostility" to arbitration agreements, the Supreme Court has stressed that the Act's Section 1 exemption must be afforded a "narrow construction." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 111, 118 (2001). Indeed, as the Supreme Court has further explained, that exemption was only enacted because transportation employees were **already subject** to federal arbitration and grievance procedures:

> By the time the FAA was passed, Congress had already enacted federal legislation providing for arbitration of disputes between seamen and their employers.... When the FAA was adopted, moreover, grievance procedures [already] existed for railroad employees under federal law..., and the passage of a more comprehensive statute providing for the mediation and arbitration of railroad disputes was imminent...

*Circuit City*, 532 U.S. at 121.

Thus, the narrow Section 1 exemption was not intended to limit enforcement of arbitration agreements entered into by all transportation workers. Rather, Congress simply recognized that some transportation employees were already protected by existing arbitration and mediation mechanisms which the new statute (the FAA) was not intended to disturb. Those pre-existing federal dispute resolution mechanisms, however, covered only a few categories of transportation "<u>employees</u>" and did **not** apply to independent contractors in the industry. Such independent contractors—like the plaintiff owner-operators here—do not fall within the narrow Section 1 exemption. To the contrary, they remain fully subject to the FAA, and their written agreement to arbitrate the present lawsuit must therefore be enforced.

   D.   Arbitration Should Also Be Ordered Pursuant To The Missouri Uniform Arbitration Act

      1.   *Missouri Law Strongly Favors Enforcement Of Arbitration Agreements*

Separate and apart from the FAA, arbitration is also mandated by Missouri's Uniform Arbitration Act, Mo. Rev. Stat. §§ 435.350 *et seq.* The lease agreement between United and its owner-operators expressly provides that "**[i]f the [FAA] is held not to apply, the arbitration laws of the State of Missouri [shall govern].**" *Ex. A, at §24(a)*(emphasis added).

Missouri law, like federal law, strongly favors enforcement of written agreements to arbitrate. *State ex rel. MCS Bldg. Co. v. KKM Med.*, 896 S.W.2d 51, 53 (Mo. App. 1995)("The public policy favoring arbitration is so strong that once an agreement to arbitrate is proven, the arbitration clause will be construed in favor of arbitration unless the clause positively cannot be interpreted to cover the asserted dispute"); *CPK/Kupper Parker v. HGL/L. Gail Hart*, 51 S.W.3d 881, 883 (Mo. App. 2001)("The FAA and Missouri's Arbitration Act are substantially similar" and both "implement a national policy favoring arbitration").

A party seeking to avoid arbitration under Missouri law also bears the burden of proving that the arbitration agreement is inapplicable or unenforceable. *See, e.g., State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 128 (Mo. banc 1995). Moreover, Missouri's arbitration statute—unlike the FAA—does **not** exempt the "contracts of employment" of transportation workers. Thus, regardless of the result reached under the FAA, the arbitration agreement in this case is valid and enforceable under Missouri law unless the plaintiffs can prove otherwise. *See, e.g., Volt Info. Services, Inc. v. Bd. of Trustees*, 489 U.S. 468, 469 ("[T]he FAA contains no express preemptive provision, nor does it reflect the congressional intention to occupy the entire field of arbitration"); *C.R. England*, 325 F.Supp.2d at 1259 ("[E]xempt status of employee under FAA does not preempt enforcement of arbitration agreement under…state law"). Plaintiffs cannot satisfy their burden under Missouri law either.

    2.    *The Arbitration Agreement Encompasses the Present Lawsuit, and Provides an Effective and Accessible Dispute Resolution Forum*

The first issue under Missouri's UAA is whether the parties' arbitration agreement encompasses the matters at issue in this lawsuit. The U.S. Supreme Court long ago declared that federal "statutory claims may be the subject of an arbitration agreement." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); s*ee also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)("[The] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights").

Here, there is no doubt that the parties' arbitration agreement applies to plaintiffs' claims. The lease provides that "**[a]ny** dispute…arising in connection with or relating to this Agreement…shall be fully and finally resolved by arbitration," **including** federal leasing regulation claims in particular. *Ex. A, at §24(a)*(emphasis added); *see also Swift*, 288 F.Supp.2d

at 1036 (arbitration clause of owner-operator lease agreement "cover[ed] the statutory [leasing regulation] claims raised by plaintiffs").

Next, this Court must analyze whether arbitration provides an effective and accessible forum to vindicate plaintiffs' claimed statutory rights. *See Green Tree*, 531 U.S. at 90 ("[C]laims arising under a statute designed to further important social policies may be arbitrated, so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum"). That test is also clearly satisfied here.

The AAA procedures designated by the parties' contract, *see Ex. A, at §24(a)*, authorize an arbitrator to award damages and any other "remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." *Swift*, 288 F.Supp.2d at 1037-38. In addition, "the discovery mechanisms provided by AAA rules" are more than adequate to vindicate the federal rights and obligations arising under RICO, federal antitrust law, **and** the federal truth-in-leasing regulations. *Id.* at 1038; *see also Gilmer*, 500 U.S. at 31.

Nor are the costs of arbitration so substantial that owner-operators under lease to United or its agents will be deterred from pursuing their grievances. To the contrary, the parties' arbitration clause goes to great lengths to ensure that owner-operators pay no more than the standard federal court filing fee if they choose to initiate an arbitration claim. Specifically, for grievances advanced by owner-operators with only one truck—which includes the vast majority of putative plaintiff class members in this case—the lease provides that **United** "shall pay the full fees and expenses of the arbitrator" as well as "the portion of the arbitration filing fee that exceeds the filing fee then in effect for civil actions in the United States district court[s]." *Ex. A, at §24(e)*. Thus, arbitration costs are certainly not "prohibitively expensive" for an owner-operator. *See also Swift*, 288 F.Supp.2d at 1038 (granting motor carrier's motion to compel

arbitration under state law, stressing that plaintiff owner-operators "have not met their burden of showing their likelihood of incurring prohibitively expensive arbitration costs").

Finally, there is nothing unfair or unconscionable about the arbitration clause in this case. The obligation to arbitrate applies equally to both contracting parties, appears in a "standard arbitration provision set forth in a non-hidden manner," and is governed by the highly regarded and "nationally recognized rules of the AAA." *Swift*, 288 F.Supp.2d at 1040. Thus, as in *Swift*, the plaintiffs' claims in this case "should be referred to arbitration and should be stayed pending the outcome of that arbitration." *Id.*

> E.  The Contractual Prohibition Against Consolidated or Class Arbitrations is Valid and Enforceable

The arbitration agreement in this case provides that "the parties agree that no consolidated or class arbitrations shall be conducted." *Ex. A, at §24(b)*. Settled and well-reasoned precedent confirms that such a contractual prohibition against class proceedings is valid and enforceable. *See, e.g., Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 727-29 (8th Cir. 2001)(District court correctly granted motion to compel arbitration and enforced the parties' agreement "to submit their claims to arbitration as individuals" rather than as part of a plaintiff class; such an agreement must be enforced "in accordance with its terms," even if "that might lead to piecemeal litigation"); *Gammaro v. Thorp Consumer Discount Co.*, 828 F.Supp. 673, 674 (D. Minn. 1993)("[T]he Eighth Circuit has held that a district court is without power to consolidate arbitration proceedings absent an authorizing provision in an arbitration agreement;" consequently, and for the same reason, "arbitration as a class action" is precluded unless the arbitration agreement specifically authorizes such class proceedings); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003)("The Arbitration Agreement at issue here explicitly precludes [plaintiffs]…from bringing class claims or pursuing 'class action arbitration,' so we

are therefore 'obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis'").[8]

Here, as in all the above decisions, there is nothing improper or unlawful about the parties' agreement to resolve their disagreements through individual arbitration proceedings. This aspect of the arbitration agreement should also be enforced according to its terms.

### F. The Present Lawsuit Should Be Stayed Even If Some Of Plaintiffs' Claims Are Outside The Scope Of The Arbitration Agreement

United's current form of lease, including its arbitration clause, was developed in 2002. This basic form of lease was then implemented, first by United and then by its independent agents, over the succeeding months and years. While the leases ultimately negotiated and entered into by United's agents with their owner-operators contain numerous differences based upon the agents' widely varying business and operational practices, United believes that all or virtually all agent leases include the same arbitration clause set forth in *Ex. A*.

Plaintiffs commenced this lawsuit on February 15, 2005. Thus, depending on this Court's statute of limitations ruling, plaintiffs' claims may apply to leases signed on or after February 15, 2003 (if United's limitations position is sustained) or February 15, 2001 (if plaintiffs' position is upheld).[9]

---

[8] *Accord, Johnston v. West Suburban Bank*, 225 F.3d 366, 369 (3rd Cir. 2000)(Prohibition against class arbitration of truth-in-lending regulation claims was "effective"); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002)(Contractual "inability to bring a class action…cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); *In re Universal Serv. Fund. Tel. Billing Proc. Litig.*, 300 F.Supp.2d 1107, 1137-38 (D. Kan. 2003)(Plaintiff failed to discharge "burden of proving that anything in the text or legislative history of the Sherman Act [or] the Clayton Act…indicates that Congress intended to grant plaintiffs a non-waivable statutory right to pursue claims under those statutes on a class-wide basis").

[9] United has filed its motion for summary judgment on time limitations issues, explaining why a two-year statute of limitations governs this case. *See 7/7/06 Defendant's Motion for Partial Summary Judgment on Time Limitations Issues [Doc. No. 47]*. Plaintiffs have not yet responded to this motion, but allege in their Complaint that a four-year limitations period should apply. *First Am. Compl.*, at p. 14, ¶1.

Because it is not yet known whether all lease agreements utilized by United and its agents prior to 2002 included arbitration clauses, it is possible that a portion of some putative class members' claims might not be governed by arbitration agreements. Nevertheless, this Court should still stay all proceedings in this case until after arbitration proceedings have concluded.

As noted at the outset (*see Part I. A, pp. 3-5 above*), the FAA requires that all judicial proceedings be stayed pending final resolution of arbitration proceedings. Such a stay, moreover, properly extends even to non-arbitrable portions of the lawsuit, because the arbitrator's rulings may well materially affect future court proceedings. *See, e.g., Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004)(FAA's mandatory stay of proceedings applies to the entirety of a civil "action," not merely arbitrable "claims" or "issues," especially if the judicial action includes issues which will first be addressed in the arbitration); *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3rd Cir. 2004)(same).

In this case, requiring United to simultaneously litigate and arbitrate claims which are inextricably intertwined would (1) undermine the strong federal and state policies favoring arbitration, (2) waste limited judicial resources, and (3) result in possibly inconsistent findings or rulings. Accordingly, the better and more efficient course of action is to stay the present lawsuit in its entirety, until after the parties' arbitration proceedings have concluded.

### III. CONCLUSION

For all the foregoing reasons, defendant United Van Lines respectfully requests this Court to (1) refer plaintiffs' claims to arbitration in accordance with the parties' valid and enforceable agreements to arbitrate; (2) stay all further proceedings herein pending final resolution of such individual arbitration actions; and (3) grant United such other and further relief as may be appropriate in the circumstances.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Michael J. Morris
    David Wells
    Michael J. Morris
    Rebecca A. Pinto
    One U.S. Bank Plaza
    St. Louis, MO 63101
    (314) 552-6000 (phone)
    (314) 552-7000 (facsimile)

Attorneys for Defendant United Van Lines, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of September, 2006, the foregoing Memorandum in Support of Defendant's Motion to Refer to Arbitration was electronically filed with the Clerk of the Court using the CM/ECF system, which in turn forwarded the same to the following counsel of record:

Paul D. Cullen, Sr.
David A. Cohen
THE CULLEN LAW FIRM, PLLC
1101 30th Street, N.W., Suite 300
Washington, DC 20007

James G. Nowogrocki
REEG & NOWOGROCKI, L.L.C.
120 South Central, Suite 750
St. Louis, MO 63105

/s/ Michael J. Morris