UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) ) No. 4:06CV219 JCH |
| v. | ) ) |
| UNITED VAN LINES, LLC, | ) ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT ON TIME LIMITATIONS ISSUES**

**INTRODUCTION**

As demonstrated in United's opening brief, plaintiffs' suit for damages under the ICC Termination Act of 1995 ("ICCTA") is:

1. Subject to a two-year statute of limitations; and

2. Barred to the extent based on lease agreements executed prior to the ICCTA's effective date of January 1, 1996.

Plaintiffs' contrary arguments in their opposition brief are untenable.

First, plaintiffs erroneously assert that the default four-year federal statute of limitations applies to their ICCTA damages claims. In doing so, plaintiffs completely ignore at least one recent, well-reasoned federal decision which reaffirms that Congress enacted a specific **two-year** limitations period for ICCTA damages suits,[1] as well as a prior authoritative decision by the U.S. Surface Transportation Board ("STB") which reached the same conclusion.[2] These rulings,

---

[1] *See OOIDA v. Mayflower Transit, Inc.*, Nos. 98-cv-0457 and 98-cv-0458, slip op. (S.D. Ind. Dec. 14, 2004)(Ex. C to United's Motion).

[2] *National Ass'n of Freight Transp. Cons., Inc.* ("NAFTC"), 61 Fed. Reg. 60140 (Nov. 26, 1996).

together with the Western District of Tennessee's well-reasoned decision in *Fitzpatrick v. Morgan Southern, Inc.*, 261 F. Supp. 978, 981-87 (W.D. Tenn. 2003), cogently explain how a plain scrivener's error—namely, the inadvertent failure to change a letter in a single statutory subsection—resulted in the ICCTA mistakenly omitting Congress' uniformly-recognized intent to enact a two-year limitations period.

Plaintiffs' attempt to counter the reasoning of these thorough and scholarly decisions is confusing, unsupported, and decidedly unpersuasive. Tellingly, in arguing that 49 U.S.C. § 14705 is "logically written" (Pls.' Opp. at 3), plaintiffs propose their own tortured and Byzantine reading of the statute—and one far less "logical" than the sensible (and directly contrary) interpretation adopted by the STB and the Courts in *Mayflower* and *Fitzpatrick*. Equally unpersuasive is plaintiffs' attempt to muddy the waters by vaguely finding fault with *Fitzpatrick*'s discussion of the ICCTA's legislative enactment. (Pls.' Opp. at 4). In fact, a review of the Congressional Record confirms that the Courts in *Fitzpatrick* and *Mayflower* (and the STB) correctly summarized the pertinent legislative history.

Ultimately, the gist of plaintiffs' argument is that this Court should follow the several flawed district court decisions refusing to correct the ICCTA's plain scrivener's error because there is no readily discernible "ambiguity" in the statute. *See* Pls.' Opp. at 7 ("**Even if legislative history supports the argument of a drafting error, the Court must not...correct the clear statutory language....**")(emphasis added). As United has explained in its opening brief, plaintiffs' arguments (and the court rulings upon which they rely) are contrary to settled law and ignore the express purpose and reasoning of the "scrivener's error" doctrine. *See U.S. v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989)(Scrivener's error doctrine applies when "the **literal application** of a statute will produce a result demonstrably at odds with the intentions of its

drafters," in which case "the intention of the drafters, **rather than the strict language,** controls")(emphasis added).

Finally, as plaintiffs are forced to acknowledge, the Eighth Circuit has already expressly determined that the ICCTA's private damages remedy cannot be retroactively applied to lease agreements executed before statute's effective date of January 1, 1996. *See OOIDA v. New Prime, Inc.*, 339 F.3d 1001, 1007-08 (8th Cir. 2003), *cert. den.* 541 U.S. 973 (2004). While plaintiffs argue at length that *New Prime* "was wrongly decided," (Pls.' Opp. at 10-13), plaintiffs must address those flawed (and previously rejected) arguments to the Eighth Circuit, and not to this Court. *New Prime* remains the controlling law in this Circuit.

Accordingly, this Court should substantially narrow the present lawsuit by ruling, as a matter of law, that (1) plaintiffs' claims are subject to a two-year statute of limitations, and (2) no putative class member can pursue claims based on leases executed prior to January 1, 1996.

## ARGUMENT

### I. PLAINTIFFS' CLAIM THAT A FOUR-YEAR LIMITATIONS PERIOD APPLIES TO THEIR ICCTA DAMAGES CLAIMS IS UNSUPPORTED, ILLOGICAL, AND LEGALLY MERITLESS

Plaintiffs erroneously argue that their alleged causes of action under the ICCTA, 49 U.S.C. § 14704(a), are subject to a four-year statute of limitations. Plaintiffs claim that the default four-year period of 28 U.S.C. §1658(a)—which applies only to federal statutory claims for which no specific limitations period exists—somehow governs their pleaded ICCTA causes of action. Plaintiffs' position is manifestly incorrect.

As demonstrated in United's opening brief, the ICCTA contains a plain scrivener's error. When a last-minute technical change was made to the statute, relocating the private right of action provision to a new statutory subsection, the legislative scriveners inadvertently failed to

make the corresponding statutory citation change [from "(b)" to "(a)"] in the Act's limitations provision. When this evident scrivener's error is recognized and corrected, there is no doubt that ICCTA damages suits are subject to the specific two-year limitations period found in § 14705(c).

> A. The ICCTA's Language, Structure, and Legislative History Disclose An Evident Legislative Scrivener's Error During The Last-Minute Technical Relocation Of The Damages Provision

In its opening brief, United explained in detail how the ICCTA's language, structure, and legislative history all confirm that the statute contains a plain scrivener's error and that, when this error is corrected, the two-year limitations period prescribed by 49 U.S.C. § 14705(c) governs plaintiffs' current claims. United's explanation, moreover, is not mere wishful thinking. Rather, the existence of this scrivener's error has been specifically confirmed not only by the STB—the federal agency charged with interpreting and enforcing the ICCTA—but also by two directly applicable federal decisions.

Significantly, plaintiffs fail to even mention the STB's authoritative discussion of the readily "apparent technical error" it observed a decade ago in the ICCTA:

> [W]e note **an apparent technical error** in the statute. Section 14704(c)(1) authorizes a person to "bring a civil action under subsection (b) [of section 14704] to enforce liability against a [motor] carrier or broker providing transportation subject to jurisdiction under chapter 135." As codified, subsection (b) refers only to tariff **overcharges**, while the provision allowing recovery of **damages** from carriers is contained in section 14704(a)(2) (as to which the statute does not expressly authorize a civil action).***Thus as enacted by Congress, section 14704(c)(1) authorized civil actions both for damages and for charges exceeding the tariff rate. **Notwithstanding the fact that section 14704(b)(2) was misplaced [having been codified in section 14704(a)(2)],** in our opinion, section 14704(c)(1) was intended to authorize a person to bring a civil action against a carrier or broker for damages.

*NAFTC*, 61 Fed. Reg. 60140 (Nov. 26, 1996)(Ex. G to United's Motion, at 2 n.3)(emphasis added). The STB has thus expressly confirmed that the private damages provision upon which plaintiffs base their claims, § 14704(a)(2), actually belongs in § 14704(b)—to which the specific

**two-year** statute of limitations unquestionably applies. *See* 49 U.S.C. § 14705(c)(Damages claims under § 14704(b) must be brought within two years). As the Court in *Fitzpatrick* correctly observed, the STB's conclusion "carries significant weight," and it is therefore "sensible for the Court to apply the two-year statute of limitations in § 14705(c) to this case." *Fitzpatrick*, 261 F. Supp. at 986.

Plaintiffs also fail to address the absurdity that would result from construing the ICCTA literally, as they propose. Specifically, § 14705(c), the ICCTA time limitations provision governing "damages" claims, refers to § 14704(b). But § 14704(b) only authorizes claims for "overcharges," and **not** "damages" suits. As United has previously demonstrated—and as plaintiffs concede by their utter silence—the distinction between "overcharges" and "damages" is well recognized throughout federal jurisprudence. Accordingly, plaintiffs' literal application of § 14705(c)'s limitations period to "damages" claims is not merely absurd but actually impossible, since § 14704(b) does not create a cause of action for "damages" at all.[3]

In addition, and as United has also previously explained, plaintiffs' literal application of § 14705(c) would result in another important absurdity. Review of the ICCTA demonstrates that a separate specific limitations period—the 18-month period found in 49 U.S.C. § 14705(**b**)—**already governs** actions for tariff "overcharges." As the Court in *Mayflower* correctly stressed, to recognize two separate and conflicting limitations periods for "overcharge" claims (while not recognizing **any** limitations period for "damages" claims) would lead to "patently absurd consequences." *See OOIDA v. Mayflower Transit*, slip op. at 6-7 (Ex. C to Mayflower's

---

[3] *See also DeBruce Grain, Inc. v. Union Pac. R. Co.*, 983 F. Supp. 1280, 1284 (W.D. Mo. 1997) (Construing corresponding ICCTA rail carrier provisions, and concluding that the omission of a limitations period for damages actions is "an absurd result that Congress could not have intended"); *Renteria v. K&R Transp., Inc.*, 1999 WL 33268638, at *5 (C.D. Cal. 1999)("The [ICCTA] provides for a limitation period for civil actions to recover **overcharges**" without any "provision governing the filing of a civil action for any other types of **damages**," an "absurd result")(emphasis added).

Motion)("[Section] § 14705(c) [already] provides for an 18-month limitations period for civil actions to recover overcharges. Given this incongruity, it is appropriate for us to look beyond the plain language of the statute to determine its intended meaning").

Notably, the labyrinthine "interpretation" of the ICCTA now advanced by plaintiffs is far more strained than the reasonable and logical construction adopted both by the Courts in *Fitzpatrick* and *Mayflower*, and by the STB in *NAFTC*. According to plaintiffs:

> The statute, is in fact, logically written. Section 14705(b) concerns actions to recover overcharges for shipments moving under **negotiated and unfiled rates**, while § 14705(c) concerns actions to recover overcharges for shipments moving under **filed and published** tariffs.

(Pls.' Opp. at 3)(emphasis in the original). It is difficult to imagine a more tortured or unsupported statutory interpretation. Section 14705 makes no reference whatever to "published" versus "unfiled" rates, and draws no distinction of any sort between different types of "overcharge" claims. Rather, the relevant distinction drawn in § 14705 is between claims for "overcharges" and claims for "damages." Overcharge claims are governed by § 14705(b)("A person must begin a civil action to recover **overcharges** within 18 months after the claim accrues")(emphasis added). By contrast, claims for "damages" are governed by § 14705(c)("A person must file a complaint…to recover **damages** under section 14704(b) within 2 years after the claim accrues")(emphasis added).

Grasping at straws, plaintiffs next try to fault *Fitzpatrick's* thorough, scholarly, and plainly correct description of the ICCTA's legislative history. Plaintiffs argue that:

> Defendant relies principally on *Fitzpatrick v. Morgan Southern, Inc.*, which found the lack of an applicable statute of limitation was due to an error created by the Whitfield amendment to the original bill, an amendment allegedly adopted in the haste to produce a final bill. The discussion of the legislative process in *Fitzpatrick* is incorrect. The legislative history reveals that the change was not at the last minute nor was it part of the Whitfield amendment.

(Pls.' Opp. at 4).

Contrary to plaintiffs' confusing (and irrelevant) arguments, the *Fitzpatrick* Court did **not** find that the technical change in § 14704 was "part of" the Whitfield amendment. Instead, *Fitzpatrick* observed—quite correctly—that the change to § 14704 was "included along with" the Whitfield amendment on November 14, 1995. *See Fitzpatrick*, 261 F. Supp.2d 978, 983 (*citing* 141 Cong. Rec. H. 12248, 12253-12307 (Nov. 14, 1995)). The *Fitzpatrick* Court further noted, again accurately, that "the Congressional Record does not indicate the reasons for the House of Representatives' amendment to § 14704, which appears to be purely technical in nature," and that "testimony given during debate on the Whitfield Amendment in the House of Representative indicates that it was introduced in haste." *Id.*

Turning to the Conference Report cited by plaintiffs (Pls.' Opp. at 5),[4] the *Fitzpatrick* Court concluded that such Report "provides powerful evidence of Congress' intentions in enacting the ICCTA." *Id.* As the Court emphasized, the Conference Report, together with the rest of the ICCTA's legislative history, evidence a clear legislative drafting error:

> The Court finds the legislative history behind § 14704 indicative of a mistake for four reasons. First, in the Conference Report Congress specifically stated that it intended to preserve the relevant statute of limitations, which was two years under the former Interstate Commerce Act. Second, Congress specifically stated that it intended to make the limitations period uniform for all types of carriers. The statute of limitations for the parallel provisions governing rail and pipeline carriers is two years. Third, the related statute of limitations provision in § 14705(c) was not concurrently amended to reflect the House of Representatives' amendment to § 14704. Fourth, testimony given during debate on the Whitfield Amendment in the House of Representative indicates that it was introduced in haste and that the Congressmen did not have sufficient time to review the bill and the proposed amendments.

*Id.*

---

[4] The Conference Report is found at H.R. Conf. Rep. No. 104-422, at 221-222 (1995), *reprinted in* 1995 U.S.C.C.A.N. 850, 906-907.

*Fitzpatrick's* discussion of the ICCTA's legislative history is accurate every respect. Most notably, the Court correctly relied on the Conference Report, which states as to § 14705: "This section preserves relevant statutes of limitations for bringing court suits by or against carriers **and makes the time limitation uniform for all types of traffic**." *Id.* (quoting H.R. Conf. Rep. No. 104-422, at 222 (1995), *reprinted in* 1995 U.S.C.C.A.N. 851, 907)(emphasis added). In view of this express Congressional intent to "preserve" the existing two-year statutes of limitations and make such limitations provisions "uniform for all types of traffic," the Court in *Fitzpatrick* quite correctly and sensibly concluded that § 14705 must be read to create a two-year statute of limitation for damages claims against motor carriers under § 14704(a)(2). *See also Mayflower* (Ex. C), slip op. at 7-8 & n. 8 (same).

Accordingly, and notwithstanding plaintiffs' confusing and unsupported contrary arguments, there is no doubt that Congress intended to enact—and thought it had enacted—a two-year statute of limitations for damages actions under § 14704. Indeed, plaintiffs themselves concede that the "overall intent" of § 14705 was to make the governing statutes of limitations uniform for all types of traffic. (Pls.' Opp. at 5). Since it is undisputed that the applicable limitations period for damages suits against **rail** and **pipeline** carriers was and is two years, *see* 49 U.S.C. §§ 1175(c) and 15905(c), the conclusion is inescapable that damages suits against **motor carriers** are subject to the same two-year limitation.

B.  <u>The ICCTA Is Properly Construed To Correct The Scrivener's Error</u>

As detailed in United's opening brief, all of the district court rulings refusing to correct the evident scrivener's error in the ICCTA are founded upon the same fundamental legal flaw—namely, that because § 14705(c) is "clear" or "unambiguous" on its face, courts can never look beyond the literal language of the statutory text. Plaintiffs do not dispute that this legal premise is plainly wrong and, tellingly, make virtually no effort to defend the reasoning of the very rulings they seek to persuade this Court to follow.

The only new case cited by plaintiffs in their Opposition, moreover, reflects precisely the same flawed reasoning. In *Smiley v. Smooth Operators*, No. 06-C-146-C, 2006 WL 1896357 (W.D. Wis. July 6, 2006), the court admitted that the "summary of the legislative history discussed in *Fitzpatrick* is reasoned and persuasive," but nonetheless concluded that it could not correct the "clear" (albeit plainly mistaken) literal language of the ICCTA. *Id.* at *4. According to the *Smiley* court, "[d]efendant's argument falters at the outset because **neither § 14704(a)(2) nor § 14705(c) are <u>ambiguous on their face</u>**." *Id.* (emphasis added).

Once again, however, by focusing on whether the ICCTA is sufficiently "ambiguous" to warrant looking beyond the statutory text, the court in *Smiley* was addressing the wrong legal issue. When faced with a potential legislative scrivener's error, the question a reviewing court must ask is not whether the statutory language is "ambiguous," but rather whether application of the **admittedly clear** statutory language would produce an absurd result demonstrably at odds with the expressed legislative intent: "<u>**Whether the text is ambiguous or not**</u>, it is still possible to consider and implement what Congress unambiguously **intended** and to overcome the drafters' unfortunate choice of words." *In re Kane*, 336 B.R. 477, 481 (Bankr. D. Nev. 2006)(emphasis added).

While plaintiffs apparently ask this Court to reject Justice Stevens's concurrence in *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 65 (2004)(Stevens, J., concurring), *see* Pls. Opp. at 7, this request is irrelevant. A majority of the Supreme Court has consistently recognized that even "plain" or "clear" statutory language cannot be applied when "the literal application of a statute will produce a result **demonstrably at odds with the intentions of its drafters.**" *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)(emphasis added). *See also Ron Pair Enters.*, 489 U.S. at 242 ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls"); *Arlington Cent. School Dist. v. Murphy*, __ U.S. __, 126 S.Ct. 2455, 2459 (2006)("When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms").

Finally, plaintiffs feebly assert that correcting the plain mistake in § 14705(c) would require "extensive changes" and a "rewriting of the statute," rather than "the simple correction of a scrivener's error." (Pls.' Opp. at 6). This argument is specious on its face. The exceedingly simple correction recognized by both *Fitzpatrick* and *Mayflower* consisted of changing **a single letter** within § 14705(c)—*i.e.*, correcting that section's plainly mistaken reference to subsection "14704(**b**)" to subsection "14704(**a**)." Such a miniscule change cannot credibly be characterized as a "rewriting" of the ICCTA.

Thus, given the language and structure of the ICCTA, its legislative history, and the authoritative construction placed on it by the STB and recent, well-reasoned court rulings, there is no doubt that the ICCTA contains a legislative drafting error that should be corrected to

effectuate Congress's clearly-expressed intent. As in *Fitzpatrick* and *Mayflower*, this Court should rule that plaintiffs' damages claims under the ICCTA are subject to the two-year limitations period of § 14705(c).

## II. ANY CLAIMS ARISING OUT OF LEASE AGREEMENTS SIGNED PRIOR TO THE ICCTA'S EFFECTIVE DATE ARE TIME-BARRED

As explained in United's opening brief, the Eighth Circuit's directly applicable ruling in *New Prime*, 339 F.3d at 1007-08, conclusively establishes that the ICCTA's private damages remedy cannot be retroactively applied to lease agreements executed before the statute took effect on January 1, 1996:

> We find that the application of the ICCTA to the case at hand would result in a retroactive application of the statute, for which there is no evidence of congressional intent. Therefore, we agree with the district court that the ICCTA's private right of action is applicable only to leases executed after the effective date of the ICCTA. Accordingly, **we affirm the granting of summary judgment in favor of [defendants] with regard to [plaintiffs'] claims, as all of their claims were based on leases and agreements executed prior to January 1, 1996**.

*Id.* (emphasis added).

In their Opposition, plaintiffs vaguely argue that United is requesting an "advisory ruling" from this Court because it "did not produce evidence of claims of any putative class members entering lease agreements with United or its agents prior to January 1, 1996." (Pls.' Mem. at 7-8). Plaintiffs' argument is meritless. It is manifestly not United's "burden" to present "evidence" that there are class members who may assert pre-1996 lease claims. Plaintiffs' own Complaint expressly purports to assert claims on behalf of all owner-operators who **ever** executed lease agreements with any of United's independent agents. *See* Compl. ¶ 19 (seeking to define the putative class as including "**all** similarly-situated owner-operators…who were parties to leases with one or more United agents")(emphasis added).

In any event, plaintiffs' lengthy and strenuous arguments that the ICCTA should—contrary to the Eighth Circuit's holding in *New Prime*—be applied retroactively to pre-1996 leases belies their suggestion that no such claimants exist. (*See* Pls.' Mem. at 8-13). And plaintiffs' position on the retroactivity issue is not only legally meritless, as detailed in United's opening brief, but is also addressed to the wrong court. The Eighth Circuit's decision in *New Prime* remains controlling law in this Circuit, and can only be overruled by the Eighth Circuit sitting *en banc* or by the Supreme Court. *See, e.g., Liberty Mut. Ins. Co. v. Elgin Warehouse and Equipment*, 4 F.3d 567, 571 (8th Cir. 1993). If plaintiffs wish to change the controlling holding of *New Prime*, therefore, they must present their arguments to the Eighth Circuit. Based on the law as it exists today, even plaintiffs cannot dispute that United is entitled to summary judgment against all owner-operators who signed leases prior to 1996.

## CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in United's opening brief, this Court should enter partial summary judgment against plaintiffs on all claims arising prior to February 17, 2004 (two years before plaintiffs filed the present lawsuit). Moreover, consistent with the Eighth Circuit's ruling in *New Prime*, this Court should also rule that any United owner-operators with lease agreements executed prior to January 1, 1996 are precluded from pursuing any claims in this case.

Respectfully submitted,

THOMPSON COBURN LLP


By: /s/ Michael J. Morris
    David Wells
    Michael J. Morris
    Rebecca A. Pinto
    One U.S. Bank Plaza
    St. Louis, MO 63101
    (314) 552-6000 (phone)
    (314) 552-7000 (facsimile)

Attorneys for Defendant United Van Lines, LLC


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of October, 2006, the foregoing Defendant's Reply Memorandum In Further Support of Its Motion For Partial Summary Judgment On Time Limitations Issues was electronically filed with the Clerk of the Court using the CM/ECF system, which in turn forwarded the same to the following counsel of record:

    Paul D. Cullen, Sr.
    David A. Cohen
    THE CULLEN LAW FIRM, PLLC
    1101 30th Street, N.W., Suite 300
    Washington, DC 20007

    James G. Nowogrocki
    REEG & NOWOGROCKI, L.L.C.
    120 South Central, Suite 750
    St. Louis, MO  63105

    /s/ Michael J. Morris